# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4693-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TAYLOR DOE,[1]

    Defendant-Appellant.

_____

Submitted June 4, 2020 – Decided July 13, 2020

Before Judges Alvarez and DeAlmeida

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 17-10-0855.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

---

[1] Defendant did not move to proceed under a pseudonym. However, we have elected to use one (Taylor Doe) when referring to defendant. See Sonia Doe, a Pseudonym v. N.J. Dep't of Corr., No. A-5101-18 (App. Div. June 3, 2020). In this circumstance, defendant's privacy interests outweigh the Judiciary's policy of transparency. See ABC v. XYZ Corp., 282 N.J. Super. 494, 501-02 (App. Div. 1995); see also N.J.S.A. 2A:82-46(b).

Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Alec J. Gutierrez, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Taylor Doe was prosecuted for two separate acts of third-degree criminal mischief, N.J.S.A. 2C:17-3, one committed in Camden County on April 8, 2017, at the Trump National Golf Course, allegedly causing $32,000 in damages, the other on the Gloucester County Campus of Rowan University, allegedly causing $15,341.83 in damages. The matters were consolidated and addressed in Gloucester County. On January 29, 2018, the Criminal Division manager rejected defendant's pre-trial intervention (PTI) application. See N.J.S.A. 2C:43-12 and former R. 3:28.[2] On February 16, 2018, the Gloucester County Prosecutor's Office also rejected the application, for the reasons stated in the PTI director's letter and for the following additional reasons: the application of each statutory factor in relation to defendant, and the nature of the charges. Defendant appeals, claiming that because her co-defendants in Camden were admitted into PTI, her exclusion from the program establishes

---

[2] "Following changes to Rule 3:28, however, the Guidelines were eliminated. Now, many of their prescriptions -- with significant variations -- are contained in Rules 3:28-1 to -10." State v. Johnson, 238 N.J. 119, 128 (App. Div. 2019). The changes went into effect July 1, 2018, months after the argument in this case.

improper disparate treatment. She also contends the rejection was improperly anchored in her political views, and that the prosecutor failed to take into account her personal characteristics. For the reasons stated by Judge Robert P. Becker, Jr., we affirm. We add the following comments.

In the first incident, defendant and two others spray painted foul language on the Trump National Golf Course fairways and putting green. In the second incident, while a student at Rowan, defendant spray painted slogans on a veteran's memorial, portions of the pavement, and campus police vehicles.

Defendant, a transgender person, when interviewed during the PTI application process disclosed a mental health and possible alcohol abuse history. She also disclosed sexual victimization as a child and abusive relationships in adolescence. Defendant's parents agreed that if she were admitted into PTI, they would pay any restitution obligation immediately. Defendant is an accomplished poet, first published at a young age.

The Criminal Division letter included the following explanation of the discovery of defendant's involvement in the Rowan vandalism: "The tips provided personal contact information and also social media that showed her dislike for government (Burning American Flag)." It also noted that during the course of the investigation, a Glassboro Police Department officer viewed a

number of videos of defendant at poetry readings in which she objected to Rowan's withdrawal of "funding from the office that supports the LGBT community . . . . the fact that her friend was arrested during a protest . . . . [and expressed] distaste for anything that represented the government/establishment." It also concluded that the program was designed to provide minimal supervision for those charged "with relatively minor offenses[,]" and that the amount of damage in these prosecutions made the acts "more than relatively minor offenses." After noting defendant was charged with "separate planned acts of vandalism[,]" the letter referred to the "need for long-term supervision and psychological and substance abuse treatment not available through the PTI program." It concluded that defendant had neither established "compelling reasons justifying admission nor . . . that a decision against enrollment would be arbitrary and unreasonable[.]"

The prosecutor's letter of rejection "agree[d]" the application "should be denied for substantially the same reasons [as the Criminal Division]," but engaged in a detailed discussion of each statutory factor then in effect. The first two factors the prosecutor weighed heavily against admission were the "separate instances of third-degree criminal mischief in both Camden and Gloucester Counties resulting in severe monetary loss," and the "facts of the case." In a

A-4693-18T4

somewhat puzzling comment, the prosecutor observed that defendant's motivation was "unknown to the Prosecutor at this point . . . ." He also weighed defendant's unique personal characteristics as moderately against admission because it seemed "unlikely the program can be tailored to meet her needs." Ultimately, the prosecutor concluded any benefit from admission into PTI would be offset by harm to society in abandoning criminal prosecution.

Following oral argument on defendant's appeal to the Law Division, the court issued a thorough written decision. After canvassing the pertinent statutes, rules, and caselaw, the judge found defendant had failed to meet the heavy burden of establishing by clear and convincing evidence that rejection from the program constituted a patent and gross abuse of prosecutorial discretion. The offenses were committed three months apart, caused substantial damage to property, and the prosecutor properly assessed each of the seventeen statutory factors. The judge opined defendant did not "show[] compelling reasons justifying her admission and establishing that a decision against enrollment would be arbitrary and unreasonable." He found "no clear error in judgment," nor that the failure to admit her into the program would subvert program goals.

Now on appeal, defendant argues:

A-4693-18T4

POINT I

THIS COURT SHOULD REVERSE THE DENIAL OF [DEFENDANT]'S PTI APPLICATION, AND EITHER ADMIT [DEFENDANT] INTO PTI, OR REMAND FOR A FRESH LOOK.

1. The Gloucester County Prosecutor and Criminal Division Manager failed to consider that Camden County admitted [defendant]'s two co-defendants into PTI for the same or similar acts.

2. The prosecutor's denial of [defendant]'s PTI application improperly relied on disagreement with [defendant]'s political viewpoint, in violation of the First Amendment.

3. The prosecutor's denial of [defendant]'s PTI application failed to consider the cost to society of using the criminal-justice system to chill speech on matters of public concern.

4. The prosecutor's denial of [defendant]'s PTI application failed to consider that [defendant] was a victim of childhood sexual assault.

I.

"In respect of the close relationship of the PTI program to the prosecutor's charging authority, courts allow prosecutors wide latitude in deciding whom to divert into the PTI program and whom to prosecute through a traditional trial." State v. Negran, 178 N.J. 73, 82 (2003) (citing State v. Nwobu, 139 N.J. 236,

246 (1995)). "Thus, the scope of review is severely limited[,]" in which we "check only the 'most egregious examples of injustice and unfairness.'" Ibid. (citing Nwobu, 139 N.J. at 246; State v. Hermann, 80 N.J. 122, 128 (1979); State v. Kraft, 265 N.J. Super 106, 111 (App. Div. 1993)) (quoting State v. Leonardis, 73 N.J. 360, 384 (1977); State v. DeMarco, 107 N.J. 562, 566 (1987)).

Defendants "attempting to overcome a prosecutorial veto, must ['clearly and convincingly establish that the prosecutor's refusal to sanction admission into a PTI program was based on a patent and gross abuse of his discretion before a court can suspend criminal proceedings under Rule 3:28 without prosecutorial consent.'" Ibid. (internal quotations omitted) (quoting Nwobu, 139 N.J. at 246).

A prosecutor's abuse of discretion requires defendant show the prosecutorial veto:

> (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [Id. at 83 (quoting State v. Bender, 80 N.J. 84, 93 (1979))].

A-4693-18T4

## II.

In this case, defendant relies on State v. Maldonado, 314 N.J. Super. 539 (App. Div. 1998), as support for the position that those charged with the same offenses, who have similar prior personal histories, must be treated on an equal basis. Id. at 544-45. But, in contrast to this case, in Maldonado, the four defendants were charged with precisely the same offenses. Here, defendant was separately charged with an unrelated offense of third-degree criminal mischief resulting in substantial monetary loss to a different victim.

## III.

Defendant's contention that the denial was improper because of the Criminal Division office's disagreement with defendant's political views has some merit. It is important to society that the criminal justice system not become an instrument for the suppression of First Amendment freedoms. The language in the letter referring to the burning of the American flag is troubling. In a different situation, the questionable comments regarding defendant's political views might be more consequential. Every citizen has the right to free speech, including burning the American flag as political expression. See Texas v. Johnson, 491 U.S. 397, 418-20 (1989). The issue here, however, is whether that impermissible outlook was mirrored by the prosecutor's rejection, and formed a

significant element in the denial of defendant's application. We cannot agree that it did.

The prosecutor did by reference adopt the director's letter, however, the prosecutor's analysis of the statutory factors made no reference to defendant's political beliefs. He instead referred to "[t]he existence of personal problems and character traits which may be related to the . . . crime." The reference is to defendant's past history and personal problems, not her political views.

Not unsurprisingly, the prosecutor weighed most heavily the fact defendant was involved in two separate offenses causing substantial damage. This was not a continuing offense, such as a bookkeeper's theft of her employer's funds over time—this was two distinct and separate incidents.

The record also does not support a conclusion that defendant's First Amendment rights were violated by her conviction for criminal mischief. "[S]peech related to matters of public concern 'occupies the highest rung of the hierarchy of First Amendment values [.]'" Rocci v. Ecole Secondaire Macdonald-Cartier, 165 N.J. 149, 156 (2000) (internal quotations omitted) (quoting Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 759 (1985). "Such speech 'requires maximum protection.'" Ibid. (quoting Sisler v. Gannett, Co., Inc., 104 N.J. 256, 266 (1986)). If a statute "relate[s] to the

suppression of free expression, [the court] must decide if the statute[] [is] content neutral or content based to determine the level of scrutiny . . . [to] apply under the First Amendment." State v. Vawter, 136 N.J. 56, 68 (1994).

> "The principal inquiry in determining content-neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). If a regulation is content neutral, "reasonable time, place, or manner restrictions" are appropriate. Clark v. Cmty. for Creative Non–Violence, 468 U.S. 288, 293 (1984). Time, place, or manner regulations are reasonable if they are "narrowly tailored to serve a significant governmental interest, and [ ] they leave open ample alternative channels for communication . . . . Ibid.
>
> [Vawter, 136 N.J. at 68 (alteration in original)].

Nonetheless, state governments may regulate graffiti, for example, to prevent vandalism, although regulatory laws cannot be so narrow as to burden speech more than necessary to prevent property damage. See Vincenty v. Bloomberg, 476 F.3d 74, 90 (2d Cir. 2007); see also AMERICAN BAR ASSOCIATION Understanding the First Amend. Limitations on Gov't Reg. of Artwork, (Jan. 2, 2017), https://www.americanbar.org/groups/state_local_government/publications/state_local_law_news/2016-

17/winter/understanding_first_amendment_limitations_government_regulation _artwork/.

The definition of criminal mischief is content neutral. It does not limit speech. The State has a legitimate interest in suppressing graffiti where the result is property damage as opposed to mere expression of ideas. The prosecution here was certainly content neutral. Defendant's rejection from PTI because of her involvement in two events, not one, also appears content neutral.

IV.

Finally, defendant contends that the sexual abuse she suffered earlier in life presents a compelling reason for admission. Unfortunately, that factor is not included in the statutory scheme, nor have we found any case in which that history created a compelling reason for admission. Defendant cites State v. Briggs, 349 N.J. Super. 496 (App. Div. 2002), in support of the argument, but the case involves a murder committed by a spouse who had been physically and mentally abused by the victim for twenty years. The expert opinions found that defendant suffered from post-traumatic stress disorder. The record here does not include evidence connecting the trauma this defendant suffered to the criminal conduct.

A-4693-18T4

Therefore, we agree with Judge Becker that defendant failed to meet her burden of proving by clear and convincing evidence that the prosecutor's rejection of her application was a patent and gross abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION